SEALED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 9:11CR _Crone_ |
| | § | |
| LODRICK ENEH (1) | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

### Medicare Program

1.      The Medicare Program ("Medicare") is a federal health care program providing benefits to persons who are over the age of sixty-five and some persons under the age of sixty-five who are blind or disabled.  Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").  Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."

2.      Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it is a public plan affecting commerce under which medical benefits, items, and services are provided to individuals and under which individuals and entities who provide medical benefits, items, or services may obtain payments.

3.     Medicare is a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f), in that it is a plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government.

4.     The Medicare program includes a voluntary supplemental insurance benefit known as Part B, which is funded from insurance premiums paid by enrolled Medicare beneficiaries and contributions from the federal treasury.  Part B of the Medicare program covers most out-patient services, including durable medical equipment ("DME").  DME is equipment that may be used in the home on a repeated basis for a medical purpose. DME suppliers who meet certain criteria may obtain Medicare provider numbers, which allow them to submit claims directly to Medicare in order to receive reimbursement for the cost of DME supplied to eligible Medicare beneficiaries.

**Orthotic Braces and Physician's Orders**

5.     Under Medicare rules, Medicare Part B pays for the cost of medically necessary orthotic braces and equipment when supplied to a beneficiary if the beneficiary had a debilitating medical condition which would be improved by the use of an orthotic brace and the need for the orthotic brace was documented by a licensed physician or approved medical practitioner in the form of a physician's order or, in some cases, a Certificate of Medical Necessity ("CMN").

6.     In order for a DME supplier to be paid for providing an orthotic brace to a beneficiary, Medicare requires the supplier to obtain documentation that the orthotic

brace was medically necessary.  The patient's treating physician is required to assess the patient's need for and potential benefit from an orthotic brace.

### The Defendant and his Co-conspirators

7.     **Lodrick Eneh** was a resident of Houston, Texas.

8.     Anthony Nnadi was a resident of Houston, Texas.  He owned and operated Nicco Medical Services, LLC ("Nicco"), which was based in Little Rock, Arkansas. Nicco was a health care provider which supplied DME to Medicare beneficiaries.

9.     Chima Imoh was a resident of Sugarland, Texas.  He owned and operated Triple Star Medical Supplies, LLC ("Triple Star"), which was based in Baton Rouge, Louisiana.  Triple Star was a health care provider which supplied DME to Medicare beneficiaries.

10.     John Nasky Okonkwo was a resident of Lynn, Massachusetts.  He owned and operated Nasky & Goldfinger Medical, Inc., which was based in Lawrence, Massachusetts, and Nasky & Goldfinger Medical, Corp., which was based in Salem, New Hampshire.  Both companies ("Nasky & Goldfinger") were health care providers which supplied DME to Medicare beneficiaries.

### COUNT ONE

Violation:  18 U.S.C. § 371
(Conspiracy)

11.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

12.     From in or around August 2008, and continuing through in or around November 2008, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendant, **Lodrick Eneh**, along with Anthony Nnadi and others both known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree to commit and abet certain offenses against the United States:

a.   To violate the Anti-Kickback statute by knowingly and willfully soliciting and receiving any remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind to induce the referral of Medicare beneficiaries for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under the Medicare program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A); or

b.   To violate the Anti-Kickback statute by knowingly and willfully offering and paying remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind to induce the referral of Medicare beneficiaries for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under the Medicare program, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A).

## Object of the Conspiracy

13.     It was the object of the conspiracy for the defendant and co-conspirators to unlawfully enrich themselves by:

a.      buying and selling patient files containing physician's orders and CMNs, which contained, among other things, information relating to the present health or condition of individuals, information relating to the provision of health care to individuals, and information relating to the present or future payment for the provision of health care to individuals, including health insurance claim numbers ("HICNs"), all relating to Medicare beneficiaries;

b.      using information contained in patient files in order to submit claims for payment to Medicare; and

c.      sharing the proceeds of the reimbursement received from Medicare.

## Manner and Means

The manner and means of the conspiracy included, but were not limited to, the following:

14.    **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators would and did solicit Medicare beneficiaries for the purpose of referring beneficiaries to Anthony Nnadi;

15.    Anthony Nnadi would and did pay kickbacks to **Lodrick Eneh** who referred Medicare beneficiaries to Anthony Nnadi for the purpose of billing Medicare for providing orthotic equipment and supplies; and

16.    **Lodrick Eneh** would and did receive kickback payments from Anthony Nnadi for the referral of Medicare beneficiaries.

## Overt Acts

17.    In furtherance of the conspiracy and to effect the objects thereof, the

following overt acts, among others, were committed in the Eastern District of Texas, and

elsewhere:

(a)    On or about June 4, 2008, **Lodrick Eneh** and co-conspirators and

individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Liberty,

Texas, where they solicited and obtained individually identifiable health information

relating to Medicare beneficiary B.W. and thereafter disclosed such information to

Anthony Nnadi;

(b)    On or about June 9, 2008, **Lodrick Eneh** and co-conspirators and

individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Cleveland,

Texas, where they solicited and obtained individually identifiable health information

relating to Medicare beneficiary R.S. and thereafter disclosed such information to

Anthony Nnadi;

(c)    On or about June 9, 2008, **Lodrick Eneh** and co-conspirators and

individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Cleveland,

Texas, where they solicited and obtained individually identifiable health information

relating to Medicare beneficiary V.S. and thereafter disclosed such information to

Anthony Nnadi;

(d)    On or about June 13, 2008, **Lodrick Eneh** and co-conspirators and

individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Cleveland,

Texas, where they solicited and obtained individually identifiable health information

relating to Medicare beneficiary L.B. and thereafter disclosed such information to Anthony Nnadi;

(e)     On or about August 20, 2008, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to Anthony Nnadi;

(f)     On or about August 25, 2008, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to Anthony Nnadi;

(g)     On or about September 4, 2008, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to Anthony Nnadi;

(h)     On or about September 10, 2008, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to Anthony Nnadi;

(i)     On or about October 3, 2008, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to Anthony Nnadi; and

(j)     On or about November 7, 2008, **Lodrick Eneh** received two kickback payments for referring Medicare beneficiaries to Anthony Nnadi.

In violation of 18 U.S.C. § 371.

## COUNT TWO

Violation:  18 U.S.C. § 371
(Conspiracy)

18.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

19.     From in or around July 2007, and continuing through in or around December 2007, the exact dates being unknown to the Grand Jury, in the Eastern District

of Texas, and elsewhere, the defendant, **Lodrick Eneh**, along with Chima Imoh and others both known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree to commit and abet certain offenses against the United States:

    a. To violate the Anti-Kickback statute by knowingly and willfully soliciting and receiving any remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind to induce the referral of Medicare beneficiaries for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under the Medicare program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A); or

    b. To violate the Anti-Kickback statute by knowingly and willfully offering and paying remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind to induce the referral of Medicare beneficiaries for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under the Medicare program, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A).

### Object of the Conspiracy

20.    It was the object of the conspiracy for the defendant and co-conspirators to unlawfully enrich themselves by:

    a.    buying and selling patient files containing physician's orders and CMNs, which contained, among other things, information relating to the present health or condition of individuals, information relating to the provision of health care to

individuals, and information relating to the present or future payment for the provision of health care to individuals, including HICNs, all relating to Medicare beneficiaries;

b.    using information contained in patient files in order to submit claims for payment to Medicare; and

c.    sharing the proceeds of the reimbursement received from Medicare.

## Manner and Means

The manner and means of the conspiracy included, but were not limited to, the following:

21.    **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators would and did solicit Medicare beneficiaries for the purpose of referring beneficiaries to Chima Imoh;

22.    Chima Imoh would and did pay kickbacks to **Lodrick Eneh** who referred Medicare beneficiaries to Chima Imoh for the purpose of billing Medicare for providing orthotic equipment and supplies; and

23.    **Lodrick Eneh** would and did receive kickback payments from Chima Imoh for the referral of Medicare beneficiaries.

## Overt Acts

24.    In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Eastern District of Texas, and elsewhere:

(a)    On or about July 31, 2007, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to Chima Imoh;

(b)     On or about August 27, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Nacogdoches, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary J.C. and thereafter disclosed such information to Chima Imoh;

(c)     On or about August 28, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Nacogdoches, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary A.W. and thereafter disclosed such information to Chima Imoh;

(d)     On or about September 9, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Nacogdoches, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary O.C. and thereafter disclosed such information to Chima Imoh;

(e)     On or about September 10, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Nacogdoches, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary G.B. and thereafter disclosed such information to Chima Imoh;

(f)     On or about September 10, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to

Nacogdoches, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary L.H. and thereafter disclosed such information to Chima Imoh;

(g)    On or about September 10, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Nacogdoches, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary M.S. and thereafter disclosed such information to Chima Imoh;

(h)    On or about September 13, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Nacogdoches, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary H.C. and thereafter disclosed such information to Chima Imoh;

(i)    On or about September 13, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Nacogdoches, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary T.C. and thereafter disclosed such information to Chima Imoh;

(j)    On or about September 13, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Nacogdoches, Texas, where they solicited and obtained individually identifiable health

information relating to Medicare beneficiary L.W. and thereafter disclosed such

information to Chima Imoh;

(k)   On or about November 15, 2007, **Lodrick Eneh** received a kickback

payment for referring Medicare beneficiaries to Chima Imoh; and

(l)   On or about December 6, 2007, **Lodrick Eneh** received two

kickback payments for referring Medicare beneficiaries to Chima Imoh.

In violation of 18 U.S.C. § 371.

## COUNT THREE

Violation:  18 U.S.C. § 371
(Conspiracy)

25.   The General Allegations section of this Indictment is realleged and

incorporated by reference as though fully set forth herein.

26.   From in or around September 2006, and continuing through in or around

June 2008, the exact dates being unknown to the Grand Jury, in the Eastern District of

Texas, and elsewhere, the defendant, **Lodrick Eneh**, along with John Nasky Okonkwo

and others both known and unknown to the Grand Jury, did knowingly and willfully

combine, conspire, confederate and agree to commit and abet certain offenses against the

United States:

a.   To violate the Anti-Kickback statute by knowingly and willfully soliciting and

receiving any remuneration, including any kickback, directly or indirectly,

overtly or covertly, in cash or in kind to induce the referral of Medicare

beneficiaries for the furnishing and arranging for the furnishing of any item or

service for which payment may be made in whole or in part under the

Medicare program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A); or

b.   To violate the Anti-Kickback statute by knowingly and willfully offering and

paying remuneration, including any kickback, directly or indirectly, overtly or

covertly, in cash or in kind to induce the referral of Medicare beneficiaries for

the furnishing and arranging for the furnishing of any item or service for which

payment may be made in whole or in part under the Medicare program, in

violation of 42 U.S.C. § 1320a-7b(b)(2)(A).

### Object of the Conspiracy

27.   It was the object of the conspiracy for the defendant and co-conspirators to

unlawfully enrich themselves by:

a.   buying and selling patient files containing physician's orders and

CMNs, which contained, among other things, information relating to the present health or

condition of individuals, information relating to the provision of health care to

individuals, and information relating to the present or future payment for the provision of

health care to individuals, including HICNs, all relating to Medicare beneficiaries;

b.   using information contained in patient files in order to submit claims

for payment to Medicare; and

c.   sharing the proceeds of the reimbursement received from Medicare.

### Manner and Means

The manner and means of the conspiracy included, but were not limited to, the

following:

28.    **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators would and did solicit Medicare beneficiaries for the purpose of referring beneficiaries to John Nasky Okonkwo;

29.    John Nasky Okonkwo would and did pay kickbacks to **Lodrick Eneh** who referred Medicare beneficiaries to John Nasky Okonkwo for the purpose of billing Medicare for providing orthotic equipment and supplies; and

30.    **Lodrick Eneh** would and did receive kickback payments from John Nasky Okonkwo for the referral of Medicare beneficiaries.

## Overt Acts

31.    In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Eastern District of Texas, and elsewhere:

(a)    On or about September 11, 2006, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo;

(b)    On or about October 31, 2006, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo;

(c)    On or about November 29, 2006, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo;

(d)    On or about December 8, 2006, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo;

(e)    On or about December 27, 2006, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo;

(f)     On or about January 19, 2007, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo;

(g)     On or about February 16, 2007, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo;

(h)     On or about March 12, 2007, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo;

(i)     On or about April 2, 2007, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo;

(j)     On or about April 20, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Beaumont, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary S.R. and thereafter disclosed such information to John Nasky Okonkwo;

(k)     On or about April 20, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Beaumont, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary M.W. and thereafter disclosed such information to John Nasky Okonkwo.

(l)     On or about May 3, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Beaumont, Texas, where they solicited and obtained individually identifiable health information

relating to Medicare beneficiary C.W. and thereafter disclosed such information to John Nasky Okonkwo;

      (m)    On or about June 5, 2007, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo;

      (n)    On or about June 11, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Jasper, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary L.K. and thereafter disclosed such information to John Nasky Okonkwo;

      (o)    On or about June 18, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Beaumont, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary D.M. and thereafter disclosed such information to John Nasky Okonkwo;

      (p)    On or about July 9, 2007, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo;

      (q)    On or about July 10, 2007, **Lodrick Eneh** and co-conspirators and individuals acting on behalf of **Lodrick Eneh** and co-conspirators traveled to Lufkin, Texas, where they solicited and obtained individually identifiable health information relating to Medicare beneficiary D.H. and thereafter disclosed such information to John Nasky Okonkwo;

(r)    On or about August 17, 2007, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo; and

(s)    On or about August 29, 2007, **Lodrick Eneh** received a kickback payment for referring Medicare beneficiaries to John Nasky Okonkwo.

In violation of 18 U.S.C. § 371.

A TRUE BILL

_____
GRAND JURY FOREPERSON

1-5-2011
_____
Date

JOHN M. BALES
UNITED STATES ATTORNEY

NATHANIEL C. KUMMERFELD
SPECIAL ASSISTANT UNITED STATES ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 9:11CR__ |
| | § | |
| LODRICK ENEH (1) | § | |

## NOTICE OF PENALTY

## COUNTS 1-3

VIOLATION:            Title 18, United States Code, Section 371
                     Conspiracy

PENALTY:             Imprisonment of not more than five years, and/or a fine of
                     $250,000 to be followed by not more than three (3) years
                     supervised release.

SPECIAL ASSESSMENT: $100.00 each count